NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3244

ANDRE' M. LEATH,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Andre' M. Leath, of Orange Park, Florida, pro se.

A. Bondurant Eley, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Harold D. Lester, Jr., Assistant Director.

Appealed from:  Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2009-3244

ANDRE' M. LEATH,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in AT0845090299-I-1.

_____

DECIDED: January 7, 2010

_____

Before RADER, PROST, and MOORE, <u>Circuit Judges</u>.

PER CURIAM.

Appellant Andre' Leath appeals from the final decision of the Merit Systems Protection Board (Board) affirming the decision of the Office of Personnel Management (OPM) denying his request for waiver of repayment of a benefit overpayment paid under the Federal Employees Retirement System (FERS). <u>Leath v. Office of Pers. Mgmt.</u>, AT-0845-09-0299-I-1, 2009 MSPB LEXIS 2946 (M.S.P.B. June 30, 2009). Because substantial evidence supports the Board's findings, we <u>affirm</u>.

## BACKGROUND

Mr. Leath was employed as a mail handler at the United States Postal Service until he retired in October 2005. Mr. Leath applied for disability retirement benefits under the Federal Employees Retirement system (FERS) on July 13, 2005. OPM

approved Mr. Leath's application for disability retirement benefits on September 28, 2005. The letter awarding Mr. Leath benefits also advised him that he was required to apply for Social Security Administration (SSA) disability benefits, provide proof that he had applied for SSA disability benefits, and notify OPM of any SSA disability benefits received. The letter stated:

> FERS disability benefits usually begin before the claim for Social Security Benefits is fully processed. Because the FERS disability benefit must be reduced by 100% of any Social Security Benefit payable for 12 months, Social Security should not be negotiated until the FERS benefit has been reduced. The Social Security checks will be needed to pay OPM for the reduction which should have been made in the FERS annuity.

J.A. 15.

On May 15, 2008, OPM sent a letter to Mr. Leath informing him that it had received information that he was entitled to SSA disability benefits effective March 1, 2006, and that it was required to reduce his FERS disability benefit accordingly. OPM further advised Mr. Leath that he had been overpaid in FERS annuity benefits in the amount of $29,576.00 for the period of March 1, 2006 through April 30, 2008. Mr. Leath completed a Financial Resources Questionnaire (FRQ) and requested that OPM waive collection of the overpayment based on alleged financial hardship.

OPM evaluated whether Mr. Leath was entitled to a waiver of the collection of an overpayment pursuant to 5 U.S.C. § 8470(b), which permits waiver when, in OPM's judgment, "the individual is without fault and recovery would be against equity and good conscience." Id. OPM further considered the related regulation, 5 C.F.R. § 845.302, which states that pertinent factors in determining fault are:

> (1) Whether payment resulted from the individual's incorrect but not necessarily fraudulent statement, which he or she should have known to be incorrect; (2) Whether payment resulted from the individual's failure to disclose material facts in his or her possession, which he or she should

2009-3244                                            2

have known to be material; or (3) Whether he or she accepted a payment that he or she knew or should have known to be erroneous.

OPM's records showed that the letter of September 28, 2005 informed Mr. Leath of the Federal retirement law requirements concerning SSA and disability benefits under FERS. However, Mr. Leath did not notify OPM of his subsequent SSA award, which OPM learned about only through the computer match program. OPM concluded that Mr. Leath knew the consequence of receiving SSA benefits and should have set aside any retroactive payments received from SSA for the purpose of paying OPM. OPM determined that Mr. Leath did not meet the requirements of eligibility for waiver under 5 U.S.C. § 8470(b), absent exceptional circumstances. OPM stated that financial hardship is not considered an exceptional circumstance and consequently denied Mr. Leath's request for waiver. OPM reviewed Mr. Leath's FRQ, calculated that Mr. Leath had a positive monthly income balance of at least $563.00, and indicated it would accept recovery of the overpayment through 99 monthly installments of $298.74 and one installment of $0.74.

Mr. Leath appealed the OPM final decision to the Board, asking the Board to waive collection of the overpayment due to financial hardship and alleging that OPM erroneously calculated his veterans' disability compensation as household income. In a telephonic status conference on May 14, 2009, the parties stipulated to the existence and amount of the overpayment, the period of accrual, and Mr. Leath's notification of the legal requirement of the need to set aside and repay SSA benefits. The Administrative Judge (AJ) found that the set-aside rule applied to Mr. Leath and that he was not entitled to waiver of the overpayment. Consequently, the Board affirmed OPM's decision, and Mr. Leath appeals.

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited.  We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003).  Mr. Leath has the burden of proving entitlement to a waiver of an overpayment by substantial evidence.  5 C.F.R. § 845.307(b) ("Burden of annuitant. The recipient of an overpayment must establish by substantial evidence that he or she is eligible for waiver or an adjustment.").

On appeal, Mr. Leath argues that the Board erred in failing to take into account his future financial liabilities, such as the need for a larger residence and future college expenses, which we interpret as a request for waiver of his repayment obligations due to alleged financial hardship.  We do not find the Board's determination to be arbitrary, capricious, or an abuse of discretion.  Mr. Leath stipulated to the existence and amount of overpayment, as well as notification of his requirement to repay the amount.  Further, evidence in the record supported the Board's determination that the set-aside rule applied to Mr. Leath, including the letter OPM sent to Mr. Leath notifying him of his approval for disability retirement benefits dated September 28, 2005.  There was substantial evidence supporting the Board's determination that the set-aside rule applies to Mr. Leath and that waiver of the overpayment is not available to him.

Mr. Leath further seeks an adjustment of his repayment schedule, arguing that the Board erroneously calculated his current income and ordinary and necessary living expenses and liabilities.  An annuitant seeking an adjustment of a repayment schedule

must show that he needs substantially all of his current income and liquid assets to meet current ordinary and necessary living expenses and liabilities. 35 C.F.R. § 845.304. Mr. Leath submitted two FRQs from which to determine his financial ability to pay the overpayment. The Board made several determinations regarding the proper calculation of Mr. Leath's ordinary and necessary living expenses. A calculation of ordinary and necessary living expenses is based on "current income" and "current . . . living expenses," not speculative future expenses. See id. The Board properly refused to consider speculative future expenses such as potential college expenses or the cost of a future residence as requested by Mr. Leath. The Board reviewed Mr. Leath's FRQ and determined that Mr. Leath had a positive monthly income balance of at least $563.00. The Board's determination was based on substantial evidence. Consequently, Mr. Leath was not entitled to an adjustment of his repayment schedule.

Mr. Leath also argues that the Board erred as a matter of law by including his VA disability benefits as income for the purposes of determining a repayment schedule. Whether VA disability benefits may be calculated as taxable income under the Internal Revenue Code is not determinative of whether the benefits can be used for calculating Mr. Leath's current income for the purpose of determining a reasonable repayment schedule. According to the Policy Guidelines on the Disposition of Overpayments under the Civil Service Retirement System and the Federal Employees' Retirement System, I.D.3, Financial Hardship, U.S. Office of Personnel Management (May 1995), OPM may consider income from "all sources which may reasonably be considered available for the individual's use," including government benefits. The Board did not legally err when

it included Mr. Leath's VA disability benefits as income in determining a proper repayment schedule for Mr. Leath.

Mr. Leath further argues that the AJ was biased against him, because the AJ allegedly "indirectly" told Mr. Leath in a telephone conversation that Mr. Leath was "going to lose." The only evidence of a telephone conversation between the AJ and Mr. Leath in the record is a May 14, 2009 "Order and Summary of Telephone Status Conference." There is no evidence in the document of bias by the AJ or record of a statement by the AJ similar to the one alleged by Mr. Leath. The parties were instructed to submit any objections to the accuracy or inclusiveness of the summary in writing by May 21, 2009. As there is no other evidence of bias in the record, Mr. Leath cannot now bring a new, unsubstantiated claim of bias, having failed to object in writing as advised.

We therefore affirm the Board's decision.

## COSTS

No costs.